## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## BATESVILLE DIVISION

**SHARON L. ROGERS**                                                                                   **PLAINTIFF**

**v.**                                        Case No. 1:19-cv-00041-LPR

**DEPARTMENT OF VETERANS AFFAIRS**                                        **DEFENDANT**
*USA*

### OPINION

On May 22, 2019, Plaintiff Sharon L. Rogers filed a Complaint for damages against the United States Department of Veterans Affairs ("Defendant") under the Federal Tort Claims Act and Arkansas law.[1]  On February 2, 2020, Mrs. Rogers filed an Amended Complaint.[2]  She seeks damages for personal injuries she allegedly sustained "as a result of a fall while on the premises of the Veterans' Administration Hospital in Little Rock, Arkansas, on or about January 23, 2018."[3]

On October 13, 2020, the Court held a bench trial in this case.[4]  After hearing testimony and receiving evidence, the Court took the matter under advisement.  The parties have each submitted proposed findings of fact and conclusions of law.  In accordance with Federal Rule of Civil Procedure 52(a), and after reviewing the parties' post-trial submissions as well as the entire record, the Court now makes the following findings of fact and conclusions of law.

---

[1] Pl.'s Compl. (Doc. 1).

[2] Am. Compl. (Doc. 12).

[3] Am. Compl. (Doc. 12) at 1.

[4] Clerk's Minutes (Doc. 37).

**Findings of Fact**

1.      Mrs. Rogers's peripheral vision is not very good.[5] Well before January 23, 2018, Mrs. Rogers was diagnosed with glaucoma.[6] Glaucoma damages the optic nerve and makes it "harder for you to see peripherally around you, up, down, both sides."[7] The damage from glaucoma is permanent.[8]

2.      On January 23, 2018, Mrs. Rogers and Mr. Ernest Paul Hayes went to the Veterans' Administration ("VA") hospital in Little Rock, Arkansas.[9] Mr. Hayes had an appointment with a renal specialist.[10] At that time, Mrs. Rogers and Mr. Hayes were just friends.[11] Subsequently, they got married.[12]

3.      Mr. Hayes drove to the hospital.[13] At some point after they arrived at the hospital's campus, Mrs. Rogers took the driver's seat.[14] Mrs. Rogers dropped Mr. Hayes off at the hospital's main entrance.[15]

4.      By that time, Mrs. Rogers had been to the VA's Little Rock hospital on many occasions.[16] She had visited the Little Rock campus enough to be familiar with "the most common

---

[5] Excerpted Trial Tr. (Doc. 40) at 58:16-21.

[6] *Id.* at 57:22-58:24.

[7] *Id.* at 9:6-15.

[8] *Id.* at 58:22-24.

[9] *Id.* at 21:1-2.

[10] *Id.*

[11] *Id.* at 81:9-21.

[12] Mr. Hayes and Mrs. Rogers got married on October 10, 2020, the Saturday before the bench trial. *Id.* For the sake of clarity and consistency, the Court will refer to Plaintiff as Mrs. Rogers.

[13] *Id.* at 21:6-7.

[14] *Id.* at 21:7-12; 22:25-23:17.

[15] *Id.* at 21:6-16; 22:25-23:17.

[16] *Id.* at 62:25-63:11.

spots" at the facility.[17]  And she was very familiar with the hospital's main entrance.[18]  Indeed, Mrs. Rogers's late husband (Mr. Rogers) was a veteran.  From 2003 until her late husband's death in 2015, Mrs. Rogers visited either the Little Rock or North Little Rock veteran's hospital an average of three times a month.[19]  Since 2016, Mrs. Rogers has accompanied Mr. Hayes to the Little Rock or North Little Rock veteran's hospital at least four times a month.[20]

5. The main entrance contains a circular drive, which is seen in Plaintiff's Exhibits 1 and 2.[21]  Around the circular drive are short brick walls that extend out from the hospital building.  The short brick walls are clearly seen in Plaintiff's Exhibit 2.  These short brick walls have been at the main entrance ever since Mrs. Rogers began visiting the hospital.[22]

6. After dropping Mr. Hayes off at the main entrance, Mrs. Rogers parked in the south parking lot, which is the parking lot to the right of the hospital when facing the main entrance.  The parking lot is best seen in Plaintiff's Exhibit 1.  Mrs. Rogers parked in an open space near the "light pole" visible in Plaintiff's Exhibit 1.[23]

7. Mrs. Rogers exited her vehicle and began to walk back toward the main entrance.[24]

---

[17] *Id.* at 63:17-20.

[18] *Id.* at 63:21-23.

[19] *Id.* at 62:25-63:11.

[20] *Id.* at 63:13-16.

[21] *Id.* at 22:4-24.

[22] *Id.* at 63:25-61:1.

[23] *Id.* at 23:18-24.

[24] *Id.* at 25:20-23.

8. To get to the main entrance from where she parked, Mrs. Rogers was required to walk around the short brick wall seen in Plaintiff's Exhibits 1 and 2.[25] Mrs. Rogers knew the short brick wall was there before she approached it.[26]

9. Mrs. Rogers had taken this exact route from the parking lot to the hospital's main entrance on previous occasions.[27] But, in all the visits she had made to the VA's Little Rock hospital, Mrs. Rogers seldom ever parked in the south parking lot and thus seldom ever had to negotiate the end of the short brick wall.[28] She estimated that she had traversed this path fewer than five times.[29]

10. Navigating the sidewalk from one side of the short brick wall to the other requires a near 180-degree turn around the end of the short brick wall.[30] The sidewalk's path around the end of the short brick wall can be seen in Plaintiff's Exhibits 1-3.

11. Mrs. Rogers approached the wall from the parking lot.[31] She walked through the parking lot until she made it around the last vehicle parked in the row directly in front of the short brick wall.[32] In Plaintiff's Exhibit 1, that spot is occupied by the dark colored pickup truck parked right next to the yellow fire hydrant.[33] Mrs. Rogers then walked diagonally toward the end of the short brick wall.[34] Her path took her just to the right side of the yellow fire hydrant seen in

---

[25] *Id.* at 26:6-10.

[26] *Id.* at 64:7-9.

[27] *Id.* at 37:14-16.

[28] *Id.* at 74:17-75:8.

[29] *Id.*

[30] *Id.* at 27:6-18.

[31] *Id.* at 30:6-13; 75:25-76:20.

[32] *Id.* at 30:6-13; 76:9-20; Pl.'s Exhibit 1.

[33] Excerpted Trial Tr. (Doc. 40) at 29:19-22. On January 23, 2018, a car, not a truck, occupied the last parking spot in the row. *Id.* at 30:9-13. Plaintiff's Exhibit 1 is a photograph from a different day.

[34] *Id.* at 30:6-13; 31:5-23.

4

Plaintiff's Exhibit 3.[35]  From there, she continued diagonally toward the end of the short brick wall.

12.  Mrs. Rogers planned to place her hand on the short brick wall as she negotiated the turn around the wall.[36]  She had seen other people do the same thing.[37]

13.  There is a slightly raised curb at the base of the end of the short brick wall.[38]  This slight raise encases the bottom of the end of the short brick wall.  The raise can be seen in Plaintiff's Exhibits 2-4 and the right side of Defendant's Exhibit 1E.  It protrudes roughly four to five inches into the sidewalk.[39]  And it is between one-fourth of an inch and two inches tall.[40]  The curb's elevation is gradual.[41]  It does not have any sharp or abrupt edges like the curbs that trace the outer perimeter of the sidewalk seen on the left side of Defendant's Exhibit 1E.

14.  The curb encasing the end of the short brick wall was not painted red on January 23, 2018.[42]  On January 23, 2018, the small curb was essentially the same color as the sidewalk.[43]  The small curb's natural color is seen in Plaintiff's Exhibit 4.

---

[35] *Id.* at 31:5-12.

[36] *Id.* at 31:13-32:5.

[37] *Id.* at 31:13-19.

[38] *Id.* at 108:23-25.

[39] *Id.* at 109:11-14.

[40] Ms. Mashburn, the Safety and Health Specialist for the hospital, testified that the small curb was "over a fourth of an inch," but that she had not measured it.  *Id.* at 126:20-22.  Adam Brosh, a police officer for the Veterans Administration, opined that the small curb was approximately three or four inches above the sidewalk.  Adam Brosh Dep. at 25:21-23.  Kevin Raymo, a maintenance mechanic at the VA hospital, testified that he thought the small curb was "probably an inch or two tall maybe."  Kevin Raymo Dep. 26:22-27:25.  The Court has weighed the credibility and knowledge of each witness.  The Court has also viewed and considered all of the relevant photographs admitted into evidence.  Weighing all of the testimony and evidence, the Court finds that the small curb at issue is between one-fourth of an inch and two inches tall.

[41] Pl.'s Exhibits 2-3; Defendant's Exhibit 1E;  Kevin Raymo Dep. 26:22-27:25.

[42] Excerpted Trial Tr. (Doc. 40) at 27:19-28:5.

[43] *Id.* at 37:22-23.  As a general matter, Federal Rule of Evidence 407 prohibits the Court from considering evidence of subsequent remedial measures.  Accordingly, the Court only relies on photos of the small curb after it was painted red to demonstrate the height, shape, and location of the small curb, as well as the path of the sidewalk and the surrounding landmarks.  None of the Court's factual or legal conclusions are influenced in any way by the fact

15. Although Mrs. Rogers had taken this path before, she had never seen or noticed any kind of raise in the surface of the sidewalk.[44] She had never noticed the small curb encasing the end of the short brick wall. On the day in question, she did not see the small curb until she fell.[45]

16. As Mrs. Rogers began to make her way around the short brick wall, her right foot caught the small inner curb and she fell.[46] Although Mrs. Rogers was close enough to the wall to trip on the small curb only inches from its base, she was not able to place her hand on the wall to steady herself as she had planned to do.[47]

17. Mrs. Rogers landed on her hands and knees.[48] She sustained contusions and abrasions to both knees, her right elbow, pain in her right wrist, and a blow to her head.[49]

18. Multiple VA hospital personnel came to Mrs. Rogers's assistance. Hospital personnel retrieved a wheelchair and wheeled Mrs. Rogers into the emergency center on location.

19. Kimberly Mashburn is the current Safety and Health Specialist at the VA's Little Rock hospital.[50] Ms. Mashburn has been employed in the Safety Office at the VA's Little Rock hospital since 2007.[51]

20. Part of Ms. Mashburn's job as a specialist is to investigate the VA's Little Rock campus for safety hazards and violations.[52] Although Ms. Mashburn and her team are not formally

---

that the small curb has been painted red since Mrs. Rogers's fall.

[44] *Id.* at 37:17-19.

[45] *Id.* at 32:24-33:3.

[46] *Id.* at 30:6-31:4.

[47] *Id.* at 31:13-32:5.

[48] *Id.* at 30:14-16.

[49] *Id.* at 34:23-36:25.

[50] *Id.* at 102:13-23.

[51] *Id.* at 102:13-23.

[52] *Id.* at 112:13-16.

required to conduct safety investigations outside the hospital building, they do investigate for safety concerns outside the hospital building on hospital grounds.[53] These outside investigations involve looking at the sidewalks and parking lots around the hospital.[54]

21.     Ms. Mashburn never identified the small curb encasing the short brick wall as a safety hazard prior to January 23, 2018.[55] In fact, she never saw the small curb while doing inspections. She admits that the small curb was difficult to see before it was painted a different color than the sidewalk.[56] In light of Mrs. Rogers's fall, Ms. Mashburn believes that the curb could be hazardous to others.[57]

22.     As far as Ms. Mashburn is aware, the small curb encasing the end of the short brick wall had been there since before she began working at the VA's Little Rock hospital in 2007.[58] The Court finds that the small curb at the end of the short brick wall had been there since at least 2007. Ms. Mashburn had never been informed of anyone else tripping over the small curb before Mrs. Rogers tripped on January 23, 2018.[59]

## Conclusions of Law

1.     Mrs. Rogers alleges that Defendant is liable for the damages arising out of the injuries she sustained when she fell on Defendant's property on January 23, 2018.[60] She asserts

---

[53] *Id.* at 113:1-10.

[54] *Id.* at 115:17-116:1.

[55] *Id.* at 116:12-23.

[56] *Id.* at 116:12-23.

[57] *Id.* at 133:13-135:6.

[58] *Id.* at 108:6-13.

[59] *Id.* at 111:18-21.

[60] Pl.'s Am. Compl. (Doc. 12) at 1.

required to conduct safety investigations outside the hospital building, they do investigate for safety concerns outside the hospital building on hospital grounds.[53] These outside investigations involve looking at the sidewalks and parking lots around the hospital.[54]

21.     Ms. Mashburn never identified the small curb encasing the short brick wall as a safety hazard prior to January 23, 2018.[55] In fact, she never saw the small curb while doing inspections. She admits that the small curb was difficult to see before it was painted a different color than the sidewalk.[56] In light of Mrs. Rogers's fall, Ms. Mashburn believes that the curb could be hazardous to others.[57]

22.     As far as Ms. Mashburn is aware, the small curb encasing the end of the short brick wall had been there since before she began working at the VA's Little Rock hospital in 2007.[58] The Court finds that the small curb at the end of the short brick wall had been there since at least 2007. Ms. Mashburn had never been informed of anyone else tripping over the small curb before Mrs. Rogers tripped on January 23, 2018.[59]

## Conclusions of Law

1.     Mrs. Rogers alleges that Defendant is liable for the damages arising out of the injuries she sustained when she fell on Defendant's property on January 23, 2018.[60] She asserts

---

[53] *Id.* at 113:1-10.

[54] *Id.* at 115:17-116:1.

[55] *Id.* at 116:12-23.

[56] *Id.* at 116:12-23.

[57] *Id.* at 133:13-135:6.

[58] *Id.* at 108:6-13.

[59] *Id.* at 111:18-21.

[60] Pl.'s Am. Compl. (Doc. 12) at 1.

that Defendant is liable under the Federal Tort Claims Act ("FTCA") and the laws of the State of Arkansas.[61]

2. "Courts decide FTCA claims under the law of the state where the tort occurred."[62] Because the alleged tort occurred in Arkansas, Arkansas law applies.

3. "The mere fact that a person slips and falls does not give rise to an inference of negligence."[63] To prevail on a negligence claim in Arkansas, a plaintiff must prove "that the defendant owed a duty to the plaintiff, that the defendant breached the duty, and that the breach was the proximate cause of the plaintiff's injuries."[64]

4. "The issue of whether a duty exists is always a question of law, not to be decided by a trier of fact."[65]

5. A property owner's duty depends on the status of the party who was injured on the property. The parties agree that Mrs. Rogers was an invitee on Defendant's property.[66] The Court also agrees that Mrs. Rogers was an invitee based on its foregoing findings of fact.

6. "In Arkansas, a property owner has a duty to exercise ordinary care to maintain the premises in a reasonably safe condition for the benefit of invitees."[67] This means that a property

---

[61] *Id.*

[62] *Budden v. United States*, 15 F.3d 1444, 1449 (8th Cir. 1994). "[T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant *in accordance with the law of the place where the act or omission occurred*." 28 U.S.C. § 1346 (emphasis added).

[63] *Wal-Mart Stores, Inc. v. Regions Bank Tr. Dep't*, 347 Ark. 826, 832, 69 S.W.3d 20, 24 (2002).

[64] *Duran v. Sw. Arkansas Elec. Coop. Corp.*, 2018 Ark. 33, at 6, 537 S.W.3d 722, 726.

[65] *Lacy v. Flake & Kelley Mgmt., Inc.*, 366 Ark. 365, 367, 235 S.W.3d 894, 896 (2006).

[66] Excerpted Trial Tr. (Doc. 40) at 145:9-20; 146:4-5; 155:15-16; 160:17-18. Arkansas courts recognize two subclasses of invitees. *Noel v. Cox*, 2019 Ark. App. 70, at 5, 570 S.W.3d 510, 514. A "public invitee is invited to enter or remain on the property as a member of the public for a purpose for which the property is held open to the public, such as a hospital or a library." *Id.* (citing *Lively v. Libbey Mem'l Physical Med. Ctr., Inc.*, 311 Ark. 41, 841 S.W.2d 609 (1992)).

[67] *Dollar Gen. Corp. v. Elder*, 2020 Ark. 208, at 7, 600 S.W.3d 597, 603 (citing *Dye v. Wal-Mart Stores, Inc.*, 300

owner must take reasonable care to guard against any harm that appear[s] "*likely in the ordinary course of events*."[68]  Arkansas law imposes "no duty to guard against merely possible, as opposed to likely or probable, harm."[69]

7. A property owner's "duty to warn invitees of a dangerous condition applies only to defects or conditions such as hidden dangers, traps, snares, pitfalls and the like, in that they are known to the owner but not to the invitee and would not be observed by the latter in the exercise of ordinary care."[70]  A "landowner generally does not owe a duty to an invitee if a danger is known or obvious."[71]

8. "A dangerous condition is 'obvious' when 'both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment.'"[72]  A dangerous condition is "known" if the plaintiff had knowledge of the existence of a dangerous condition and appreciated the corresponding danger.[73]

9. In *Jenkins v. Hestand's Grocery, Inc.*, the plaintiff tripped and fell on a "very slight slope" that was "built to aid shopping carts and wheelchairs in negotiating the curb between the sidewalk and [the defendant's] parking lot."[74]  The state trial court granted the defendant's motion

---

Ark. 197, 198, 777 S.W.2d 861, 862 (1989)).

[68] *Ethyl Corp. v. Johnson*, 345 Ark. 476, 483, 49 S.W.3d 644, 649 (2001) (quoting *St. Louis-San Francisco Ry. Co. v. Burns*, 186 Ark. 921, 56 S.W.2d 1027, 1028 (1933)) (emphasis added).

[69] *Id.* at 482, 49 S.W.3d at 649.

[70] *Dollar Gen. Corp.*, 2020 Ark. at 7, 600 S.W.3d at 603 (citing *Ethyl Corp.*, 345 Ark. at 483, 49 S.W.3d at 649).

[71] *Id.* (citing *Kuykendall v. Newgent*, 255 Ark. 945, 947, 504 S.W.2d 344, 345 (1974)).  In *Jenkins v. Hestand's Grocery, Inc.*, the Arkansas Supreme Court indicated that a hidden danger is by definition not open or obvious and an open and obvious danger is by definition not hidden.  320 Ark. 485, 488, 898 S.W.2d 30, 31 (1995).

[72] *Hope Med. Park Hosp. v. Varner*, 2019 Ark. App. 82, at 6, 568 S.W.3d 818, 823 (quoting *Van DeVeer v. RTJ, Inc.*, 81 Ark. App. 379, 386, 101 S.W.3d 881, 885 (2003)).

[73] *Id.* (quoting *Van DeVeer*, 81 Ark. App. at 386, 101 S.W.3d at 884).

[74] *Jenkins*, 320 Ark. at 486, 898 S.W.2d at 30.

for summary judgment because there was no evidence showing that the condition in question was dangerous. In so concluding, the trial court noted that the "store had operated with the same condition in place some 29 years, serving 3000 to 4000 customers weekly without any such incident."[75] On appeal, the Arkansas Supreme Court affirmed the trial court's ruling and rationale. The Arkansas Supreme Court noted not only that the plaintiff failed to show that the slope was dangerous, but also that there was no evidence that the defendant had any knowledge "that the ramp was dangerous or involved an 'unreasonable risk' to its invitees."[76]

10.    Mrs. Rogers failed to meet her burden of proving that Defendant owed her a duty to warn her of the danger associated with the small curb encasing the base of the end of the short brick wall. For starters, the Court is not persuaded that the small curb encasing the base of the end of the short brick wall was dangerous to invitees. As noted above, "[t]he mere fact that a person slips and falls does not give rise to an inference of negligence."[77]

11.    Similar to the facts in *Jenkins*, the small curb that Mrs. Rogers tripped on was situated in a highly trafficked area. While I do not know exactly how long the small curb has existed, Ms. Mashburn testified that, as far as she knew, the curb had been there since before she began working there in 2007. And while I do not know exactly how many patrons have walked by the small curb in the many years of its existence, I do know that the only way to get from the south parking lot to the hospital's main entrance by sidewalk is to pass the curb at issue. It is reasonable to infer that thousands upon thousands of people have walked by the short brick wall and the small curb. In fact, Mrs. Rogers successfully traversed this same path in times past. And similar to the *Jenkins* case, Ms. Mashburn testified that she had never been informed of anyone

---

[75] *Id.* at 486–87, 898 S.W.2d at 30–31.

[76] *Id.* at 488, 898 S.W.2d at 31–32.

[77] *Wal-Mart Stores, Inc.*, 347 Ark. at 832, 69 S.W.3d at 24.

else tripping over the small curb before Mrs. Rogers tripped on January 23, 2018.[78] Mrs. Rogers did not provide any evidence showing otherwise. Having closely examined the photographic evidence and entire trial record, the Court concludes that the stronger weight of the evidence is that the small curb is not a danger to invitees.[79]

12. Ms. Mashburn did admit that it was difficult to see the slight raise before it was painted a different color than the sidewalk.[80] And Ms. Mashburn testified that she now believes that the curb could be hazardous in light of Mrs. Rogers's fall. But Ms. Mashburn was not testifying as an expert. Her lay opinion on whether she thinks that the slight curb is hazardous does not tilt my determination in Mrs. Rogers's favor. The overwhelming evidence suggests that the small curb existed for a long time in a highly trafficked area without incident. Once again, Arkansas imposes "no duty to guard against merely possible, as opposed to likely or probable, harm."[81]

13. Mrs. Rogers also failed to prove that Defendant knew or should have known that the small curb encasing the base of the end of the short brick wall was dangerous to invitees.[82] To the contrary, Ms. Mashburn testified that she has worked at the VA's Little Rock campus since 2007 and had never identified the curb as a safety hazard during any of her safety inspections prior to Mrs. Rogers's fall. And until Mrs. Rogers fell, Ms. Mashburn had never been informed of anyone else tripping over the same curb.[83]

---

[78] Excerpted Trial Tr. (Doc. 40) at 111:18-21.

[79] Although I designate this as a conclusion of law, if it is more appropriately considered a factual finding, I make this finding of fact as well.

[80] *Id.* at 116:12-23.

[81] *Ethyl Corp.*, 345 Ark. at 482, 49 S.W.3d at 649.

[82] Although I designate this as a conclusion of law, if it is more appropriately considered a factual finding, I make this finding of fact as well.

[83] Excerpted Trial Tr. (Doc. 40) at 111:18-21.

11

14. Even if Mrs. Rogers had shown by a preponderance of the evidence that the small curb was a danger, and even if Mrs. Rogers had similarly established that Defendant knew or should have known of its danger, the small curb was not a hidden danger. Mrs. Rogers argues that it is Defendant's burden to establish that the danger was obvious, not her burden to show that the danger was hidden.[84] Defendant argues the exact opposite.[85] In *Jenkins*, the Arkansas Supreme Court indicated that a hidden danger is simply one that is not known or obvious, and *vice versa*.[86] In other words, whether a danger is hidden or obvious ultimately addresses the exact same question—did the defendant owe the plaintiff a duty to warn of a dangerous condition. Because it is the plaintiff's burden to establish that the defendant owes a duty of care, it is the plaintiff's burden to establish that a dangerous condition was hidden. Defendant is therefore correct that Mrs. Rogers shoulders the burden of showing that the small curb she tripped over was hidden.[87]

15. As explained above, a "dangerous condition is 'obvious' when 'both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment.'"[88] Mrs. Rogers argues that a reasonable person "in the position of the visitor" is a person that shares in all of the visitor's physical infirmities. Thus, according to Mrs. Rogers, even if the small curb was obvious to the ordinary, reasonable person, it would not be obvious to a reasonable person in her position given her age and limited peripheral vision. Mrs. Rogers argument is unavailing.

---

[84] *Id.* at 152:6-19.

[85] *Id.* at 155:20-156:2.

[86] 320 Ark. 485, 488, 898 S.W.2d 30, 31 (1995).

[87] Even if the Court is incorrect, and thus the burden is on Defendant to prove the danger was known or obvious, the Court's ultimate conclusion in this case and on this record would not change.

[88] *Hope Med. Park Hosp.*, 2019 Ark. App. at 6, 568 S.W.3d at 823 (quoting *Van DeVeer*, 81 Ark. App. at 386, 101 S.W.3d at 885).

12

16.     As an initial matter, Mrs. Rogers has not convincingly demonstrated that "in the position of the visitor" is appropriately understood as "with the visitor's particular physical infirmities." If that were the case, the Court would be reduced to considering nothing more than whether a plaintiff acted reasonably despite failing to notice the alleged dangerous condition. If the answer is yes, the danger would be deemed "hidden" for that plaintiff regardless of whether it was "hidden" as to other potential plaintiffs. That can't be right. The more sensible understanding is that "in the position of the visitor" means from the same objective vantage point as the visitor had and under the same external conditions as the visitor faced.

17.     Mrs. Rogers cites *Shook v. Love's Travel Stops & Country Stores, Inc.*, in support of her position that "in the position of the visitor" includes all of the visitor's physical impairments.[89] In *Shook*, a lady wearing a neck brace tripped over a folded rug on the defendant's property. The trial court granted the defendant's motion for summary judgment and the plaintiff appealed. In reversing the trial court's ruling, the Arkansas Court of Appeals stated that the plaintiff in *Shook* "presented evidence that a reasonable person in [the plaintiff's] position—wearing a cervical collar with limited ability to look down—would not have recognized or appreciated the risk of the folded rug . . . ."[90] First, this is not a decision of the Arkansas Supreme Court. Second, the court of appeals merely sent the case back down for trial. At the most, the opinion stands for the proposition that a jury may consider the effect of a physical impairment as part of its overall analysis of whether a danger was hidden or obvious. Third, in sending the case back for trial, the appellate court also emphasized video evidence revealing that "*other persons*

---

[89] 2017 Ark. App. 666, at 7, 536 S.W.3d 635, 639.

[90] *Id.*

*with no apparent obstructions to their ability to view the floor*" tripped over the same rug that tripped the plaintiff.[91] This confirms the importance of an objective reasonable person analysis.[92]

18.     Finally, in further support of her subjective impairments argument, Mrs. Rogers notes that the VA's typical invitees are those suffering from physical infirmities. This point is well taken, but it does not help Mrs. Rogers's case. To the contrary, the lack of other previous incidents related to this curb actually suggests that the small curb was not a hidden danger even among the physically impaired. Even Mrs. Rogers (the ideal representative of her own physical impairments) admitted that she had taken the exact same route without issue in times past.

19.     After considering all of the testimony given at trial, the deposition excerpts admitted into the record, and all of the exhibits, the Court concludes that Mrs. Rogers failed to show that the small curb was hidden. To the extent that the small curb posed a danger, the danger was obvious. A reasonable person in Mrs. Rogers's position, exercising ordinary perception, intelligence, and judgment, would have recognized the dangerous condition of the small curb and appreciated the associated risk. The Court places significant weight on Plaintiff's Exhibits 1-4 in reaching this decision. These photographs clearly demonstrate that the small curb would not have been hidden from a person in Mrs. Rogers's position exercising ordinary and reasonable powers

---

[91] *Id.* (emphasis added).

[92] Arkansas recognizes the "eggshell plaintiff" rule. *See, e.g., Smith v. Galaz*, 330 Ark. 222, 953 S.W.2d 576, 578 (1997); *Primm v. U.S. Fid. & Guar. Ins. Corp.*, 324 Ark. 409, 414, 922 S.W.2d 319, 322 (1996). Simply put, the rule embraces the principle "that a tortfeasor must accept a plaintiff as he finds him and may not escape or reduce damages by highlighting the injured party's susceptibility to injury." *Primm*, 324 Ark. at 414, 922 S.W.2d at 321. In other words, liability for negligence attaches even when a plaintiff is "susceptible to enhanced injury by virtue of an existing condition." *Id.* But this consideration applies to the question of damages and proximate cause. It does not modify a property owner's "duty to exercise ordinary care to maintain the premises in a reasonably safe condition for the benefit of invitees." *Dollar Gen. Corp.*, 2020 Ark. at 7, 600 S.W.3d at 603 (citing *Dye*, 300 Ark. at 198, 777 S.W.2d at 862). Nor does it apply to a property owner's obligation to take reasonable care to guard against any harm that appear[s] "likely in the ordinary course of events." *Ethyl Corp.*, 345 Ark. at 483, 49 S.W.3d at 649 (quoting *St. Louis-San Francisco Ry. Co.*, 186 Ark. 921, 56 S.W.2d at 1028) (emphasis added).

of observation. In allocating significant weight to these photos, the Court reemphasizes that its determination is not influenced by the presence of the red paint in Plaintiff's Exhibits 1-3.[93]

20. It was Mrs. Rogers's burden to establish by the greater weight of the evidence that Defendant owed her a duty. Mrs. Rogers failed to show: (1) that the slight curb encasing the base of the end of the short brick wall was dangerous; (2) Defendant knew that the slight curb encasing the base of the end of the short brick wall was dangerous; and (3) that, to the extent that the slight curb could be considered dangerous, it was hidden or not an obvious danger. Because Mrs. Rogers failed to make these showings, she failed to establish that Defendant had a duty to warn her of the curb at issue.

21. Mrs. Rogers is not entitled to an award of damages for negligence.[94] Mrs. Rogers is not entitled to an award of damages under the FTCA or Arkansas law.[95]

## Conclusion

In accordance with the Findings of Fact and Conclusions of Law, IT IS HEREBY ORDERED that judgment shall be entered in FAVOR of Defendant Department of Veterans Affairs and AGAINST Plaintiff Sharon L. Rogers.

---

[93] Although I designate this as a conclusion of law, if it is more appropriately considered a factual finding, I make this finding of fact as well.

[94] *See, e.g.*, *Duran v. Sw. Arkansas Elec. Coop. Corp.*, 2018 Ark. 33, at 7, 537 S.W.3d 722, 727; *Marlar v. Daniel*, 368 Ark. 505, 509, 247 S.W.3d 473, 477 (2007).

[95] At the bench trial, Mrs. Rogers's attorney attempted to prematurely advance an argument regarding Defendant's alleged noncompliance with certain regulations prescribed by the Americans with Disabilities Act ("ADA"). Excerpted Trial Tr. (Doc. 40) at 138:22-144:7. The Court stopped Mrs. Rogers's attorney from continuing and informed him that he needed to wait until closing argument to offer argument. *Id.* During closing argument, Mrs. Rogers's attorney failed to identify any specific ADA regulations that supported Mrs. Rogers's case. *Id.* at 144:25-155:5; 168:8-174:10.

Even if Mrs. Rogers's attorney had appropriately raised the argument and had successfully led the Court through the ADA's nuanced regulations, and even if the facts supported the contention that Defendant was not compliant with the ADA's regulations, such noncompliance is not dispositive of negligence. Violation of a regulation is merely evidence of negligence. *See, e.g.*, *Koch v. Northport Health Servs. of Ark., LLC*, 361 Ark. 192, 208, 205 S.W.3d 754, 766 (2005). In this case, the evidence overwhelmingly indicates that the small curb encasing the base of the end of the short brick wall was not a hidden danger to Defendant's invitees.

IT IS SO ORDERED this 29th day of January 2021.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT COURT